UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| LATASHA DAVIS, et al, | :<br>:<br>: |
| Plaintiffs,<br>v. | :<br>:<br>: Civil Action No. 2:16-cv-206 |
| BT AMERICAS INC., et al, | :<br>: |
| Defendants. | :<br>: |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiffs' Motion for Conditional Collective Action Certification Pursuant to 29 U.S.C. § 216(b). ECF No. 32. On behalf of themselves and others similarly situated, Plaintiffs brought this action to recover unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. On September 6, 2016, Plaintiffs filed their motion seeking conditional certification requesting that the Court conditionally certify a collective class action and transmit notice to potential class members. ECF No. 32. Defendants responded in opposition on September 20, 2016, ECF Nos. 34-35, and Plaintiffs replied on September 27, 2016, ECF No. 36. This matter was then referred to the undersigned United States Magistrate Judge pursuant to a Referral Order from the Chief United States District Judge. ECF No. 37; *see also* 28 U.S.C. §§ 636(b)(1)(B); Fed. R. Civ. P. 72(b); E.D. Va. Local Civ. R. 72.

On October 25, 2016, the undersigned conducted a hearing on the pending motion, at which James Shoemaker appeared for the Plaintiffs, Nathaniel Glasser appeared for Defendants BT Americas Inc. and BT Conferencing Inc., (collectively "BT") and Amy Pocklington appeared

1

for Defendant Manpower Group US, Inc. ("Manpower"). On November 1, 2016, the parties filed a joint motion to sever the claim of Plaintiff Stephane Gassant against Defendant Manpower from the remaining Plaintiffs' claims against BT Americas. ECF No. 40. This motion was denied on November 3, 2016. ECF No. 41. On November 8, 2016, the parties filed a voluntary dismissal of Plaintiff Gassant and Defendant Manpower pursuant to Federal Rule of Civil Procedure 41(a)(1)(A). For the following reasons, the undersigned **RECOMMENDS** that the Plaintiffs' Motion for Conditional Collective Action Certification, ECF No. 32, be **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In this action as originally filed Plaintiffs are six current and former employees of BT, as well as one former employee of Manpower. ECF No. 33 at 2. Plaintiffs were employed as telecommunication services representatives at the BT Conferencing Inc., facility in Chesapeake, Virginia from April 26, 2013 to the present. *Id.* Manpower is a staffing agency that provides employees to BT's facility. ECF No. 35 at 5.

Plaintiffs' main, or catalytic, claim is that Defendants failed to pay overtime compensation for time spent logging in and out of Defendants' computer systems at the beginning and end of each day ("the catalytic claim"). ECF No. 33 at 4. Plaintiffs also claimed three non-catalytic claims based on Defendants' alleged (1) failure to pay them for time spent on breaks of less than twenty minutes if they went over their allotted two, ten to fifteen minute breaks a day; (2) "[t]he occasional and recurring failure to record and compensate the Plaintiffs for calls that continued after their regularly scheduled shift had ended;" and (3) "[t]he occasional and recurring deduction of time for a lunch break when no lunch break was afforded or lunch was eaten while working." *Id.* at 4-5.

In support of their catalytic claim, the BT Plaintiffs alleged, and provided six declarations in support, that prior to their shift, BT employees are required to log in to their computer operating system, a tracking system, and a payroll system, which can take several minutes before the systems are up and running and Plaintiffs' shifts, and their compensation, begins. *Id.* at 3-4. Since BT employees are required to log in to a payroll system at the beginning of their shift, and their compensation does not begin until they are logged in to the payroll system, the employees claim they are entitled to be paid for this log-in time, which they variously alleged to take between seven and fifteen minutes, and longer after weekends. *Id.*; attach. 4-5, 7-10. Manpower employees only had to log in to their computer operating system and the tracking system. *Id.* at 4. Manpower alleged, and Plaintiffs did not dispute, that Manpower employees could log in to their payroll system at any time, and thus could report time spent logging in to the computer systems. ECF No. 34 at 2. Notably, Plaintiffs alleged that "[i]f they were late in having their systems up and running for their shift, even if by one minute, they would be subject to significant discipline, up to and including termination." ECF No. 33 at 4. Plaintiffs stated they "felt the personal need" to arrive to work an average of more than ten minutes early every day to log in to their computers and "even earlier" when logging in to their computer after they had shut it down at the end of the week or before a holiday. *Id.* While the BT Plaintiffs' declarations addressing the catalytic claim described a circumstance that applied to all BT employees, the circumstances attending the non-catalytic claims varied, described as "occasional," occurring "sometimes," or varying by supervisor. *Id.*; attach. 4-5, 7-10. Plaintiffs also submitted a proposed notice that included terms, *inter alia*, requiring the consent forms to be returned to the Clerk of Court within sixty days of receiving the notice. *Id.* at 4; attach. 2. Lastly, Plaintiffs asserted qualifications for their counsel to be appointed class counsel. *Id.* at 11-12.

3

In their Memoranda of Opposition, BT and Manpower argued that the Plaintiffs' proposed class is not similarly situated and subject to a common policy or plan because they are employed by two separate employers with distinct timekeeping systems. ECF No. 34 at 5; ECF No. 35 at 5-6. Because Manpower employees could log in to their timekeeping system and report their time at their convenience, the Defendants argued that the BT and Manpower Plaintiffs were not similarly situated or subject to a common policy or plan. BT further claimed that it lacked a policy or plan that violated the FLSA because Plaintiffs were not required to arrive early, but only did so because they "personally felt the need." ECF No. 35 at 6. BT contended its employees were not disciplined for not being logged in before their shift began unless they did so six times, and that the employees could submit a justifiable reason for being late. *Id.* at 16. Moreover, BT stated the amount of time it takes for its employees to log in is *de minimis* as it typically only took them "no more than 2 minutes" to log in to their computers. *Id.* at 7.

Plaintiffs in their reply agreed to limit the scope of their motion to only BT Employees. ECF No. 36 at 1. At the hearing, counsel for Manpower indicated that she and Plaintiffs' counsel have agreed to sever the one Manpower Plaintiff from the case, and such a joint motion, ECF No. 40, was filed on November 1, 2016. Plaintiffs' counsel also stated he would consent to a notice period of thirty days and to collect the consent forms and file them with the Court.

On November 3, 2016, the Chief United States District Judge denied the Motion to Sever, concluding that if Plaintiff Gassant's case lacks common questions of law or fact with the other six plaintiffs, then she "should be dismissed without prejudice from this action, and allowed to file her own action." ECF No. 41 at 1. Subsequently, the parties filed a voluntary dismissal of Gassant and Manpower, leaving only the BT employees and BT in the case. ECF No. 42.

4

## II. LEGAL STANDARD

Section 216(b) of the FLSA permits a plaintiff to bring suit "for and in behalf of himself... and other employees similarly situated." 29 U.S.C. § 216(b). Although the FLSA and the Fourth Circuit have not specifically delineated a standard for determining whether a potential class is sufficiently "similarly situated" to permit conditional certification, the district courts within the Fourth Circuit follow a two-step approach to determine if the plaintiffs are "similarly situated," (1) the notice stage and (2) the decertification stage. *See, e.g., Purdham v. Fairfax Cnty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009); *Meeker v. Med. Transport, LLC*, No. 2:14cv426, 2015 WL 1518919, at *2 (E.D. Va. Apr. 1, 2015).

In the notice stage, the Court uses "a fairy lenient standard" to determine whether to provide notice to potential class members. *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006). The plaintiffs must show "that a similarly situated group of plaintiffs exists" and "demonstrate they and potential plaintiffs together were victims of a common policy or plan that violated the [FLSA]." *Meeker*, 2015 WL 1518919, at *3. "The primary focus in this inquiry is whether the potential plaintiffs are 'similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined.'" *Houston v. URS Cop.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008) (quoting *Choimbol*, 475 F. Supp. 2d at 563). "Plaintiffs and putative class members need not have identical situations; '[d]ifferences as to time actually worked, wages actually due and hours involved are, of course, not significant to this [similarly situated] determination.'" *Meeker*, 2015 WL 1518919, at *3 (citing *De Luna-Guerrero v. N.C. Grower's Ass'n Inc.*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004)).

Typically once discovery has been completed, the Court proceeds with the decertification stage where using a "heightened fact specific standard," it determines whether the case can

proceed to trial. *Choimbol*, 475 F. Supp. 2d at 563. In the "rare case when there is sufficient evidence in the record at the notice stage to reveal that certification of the collective action is not appropriate...the court may collapse the two stage certification and deny certification outright." *Stone v. SRA Int'l, Inc.*, No. 2:14cv209, 2014 WL 5410628, at *3 (E.D. Va. Oct. 22, 2014) (citing *Purdham*, 629 F. Supp. 2d at 547).

When some discovery has been completed, district courts within the Fourth Circuit are divided on whether to apply a heightened standard for conditional class certifications. *Compare Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10cv592, 2011 WL 4351631, at *5 (W.D.N.C. Sept. 16, 2011) (utilizing an "intermediate" standard of review" of "whether a sound basis exists for proceeding as a collective action while also considering all evidence available at the time" when the parties conducted three months of discovery, exchanged interrogatories and documents, and took several plaintiffs' depositions), *with Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566-67 (D. Md. 2012) (declining to apply an increased standard of review when the parties have completed some discovery). Here, the parties have not identified what, if any, discovery has occurred to date. Since no controlling authority from the Fourth Circuit or the Eastern District of Virginia mandates a heightened standard at this stage of the proceedings, the undersigned applies the lenient standard for the conditional certification stage.

### III. DISCUSSION

Plaintiffs alleged that they have been deprived of overtime in four respects, which may be summarized as failure to pay for: (1) time spent logging in to computer systems, (the catalytic claim); (2) time spent on breaks less than twenty minutes; (3) time spent working after their shift ended; and (4) time spent working through the lunch break. While the latter three claims reflected instances that were variously described as occasional and/or variable by supervisor, and

thus raise a real question as to whether the Plaintiffs have established, even at this lenient stage, that they were subject to a uniform policy or practice, the catalytic claim is not so problematic. The catalytic claim sufficiently sets forth a similarly situated group of employees who are subject to a common policy or plan that deprives them of compensation. Accordingly, the undersigned **RECOMMENDS** that Plaintiffs' Motion for Conditional Class Certification and Notice under the FLSA, 29 U.S.C. § 216(b), be **GRANTED**.

First, according to Plaintiffs' declarations, BT employees do not begin to be compensated until they have logged in to all three computer systems, including their payroll system which, once they are logged in, starts tracking their time for pay purposes. BT employees claim, therefore, that they are required to arrive at work between seven and fifteen minutes early in order to log in to the various computer systems, and that their compensation does not begin until they are so logged in. Since the employees averred that they are subject to discipline, including possible termination, if they log in even one minute late, they have sufficiently alleged a common policy applicable to all BT employees that requires early attendance at work for which they are not paid. BT's argument that such time is *de minimis*, which perhaps may be proven accurate following discovery, at this stage does not merit denying conditional certification. First, whether the log in time is seven to fifteen minutes, as Plaintiffs claim, or up to two minutes, as BT claims, is a material fact in dispute that this Court need not and should not determine at this stage of the proceedings. Moreover, the parties do not dispute that Plaintiffs may be subject to discipline if they log in even one minute after their scheduled shift time begins. The fact that such discipline may only accrue upon the sixth occurrence, as alleged by BT, does not alter the calculus because the alleged policy requiring early arrival at work is imposed every day. Hence,

7

Plaintiffs have alleged a uniform policy or practice that requires early arrival at work in order to complete the log in process before their scheduled shift begins.

In addition, Plaintiffs must demonstrate that they are similarly situated to the putative class members they seek to represent. As telecommunications services representatives with substantially similar job duties who are subject to the same policies and procedures, at this stage in the proceedings, Plaintiffs have sufficiently proffered that they are similarly situated. Each of the BT declarations reflect common job duties and responsibilities, and common policies that apply to all BT telecommunications services representatives. The putative class is limited to those BT employees working at the Chesapeake, Virginia location, all of whom perform the same duties. While the declarations varied somewhat as to the length of time the employees reported early to work in order to log in to their systems, such individual variance is not determinative. Plaintiffs and putative class members need not be identical in all respects to meet the similarly situated standard. *Meeker*, 2015 WL 1518919, at *3 (citing *De Luna-Guerrero* 338 F. Supp. 2d at 654).

Inasmuch as Defendants have not contested the qualifications of Plaintiffs' counsel to represent the class, and Plaintiffs' counsel has previously successfully represented class plaintiffs in similar FLSA litigation, the undersigned **RECOMMENDS** appointing Plaintiffs' counsel as class counsel.

Moreover, if the Court conditionally certifies the class, then an appropriate notice is required. The Court has reviewed the Plaintiffs' proposed notice, ECF No. 33 attach. 2, and BT's proposed notice, ECF No. 35 attach. 20, and **RECOMMENDS** adopting Plaintiffs' notice with certain changes. Those changes have been made to the Plaintiffs' proposed notice, which is attached to this report and recommendation. Those changes are described as follows.

First, the parties voluntarily dismissed Plaintiff Gassant and Manpower from this case. As a result, the notice should be modified to reflect that it only pertains to Defendants BT Americas, Inc. and BT Conferencing, Inc., and all references to Manpower Group US, Inc. are removed, including from the Consent Form.

Second, under section II, "Description of the Lawsuit," the description of the type of overtime work for which Plaintiffs claimed they were not paid should include Defendants' explanation. The proposed description accurately advises the potential plaintiffs of the particular manner in which it is alleged that overtime compensation has not been paid. In addition, the description should reflect that the lawsuit seeks to recover "wages," not "damages."

Third, under section III, "To join this Lawsuit," Plaintiffs' proposed notice directs potential plaintiffs to submit the "Consent to Become a Party Plaintiff" form to the Clerk of Court within sixty days from the date of the Notice's mailing. ECF No. 33 attach. 2 at 2. In the interest of judicial economy and avoiding cumbersome filings, the notice should instead provide that potential plaintiffs are directed to send their consent forms to Plaintiffs' counsel, who may then electronically file them individually or collectively. Defendants' counsel proposed this modification to which Plaintiffs' counsel agreed at the hearing.

Fourth, in the same section, the time frame for potential plaintiffs to respond to the notice should be reduced to thirty days from the date of mailing. Given the size of the proposed class, which apparently is less than thirty, ECF No. 36 at 2, and the fact that the geographic location is limited to Chesapeake, Virginia, allowing thirty days to respond is sufficient. This modification was also proposed by Defendants and agreed to by Plaintiffs' counsel at the hearing.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Plaintiffs' Motion for Conditional Collective Action Certification, ECF No. 32, be **GRANTED**. Additionally, the undersigned **RECOMMENDS** Plaintiffs' counsel be appointed as class counsel and that Defendant BT be ordered to provide Plaintiffs' counsel with the names, last known mailing addresses, home and/or mobile phone numbers, and email addresses of all potential members of the conditionally certified class. Further, the undersigned **RECOMMENDS** that the Court order the parties use the attached revised notice and that any consent to joinder in this action must be collected by Plaintiffs' counsel and filed with the Clerk of Court no later than thirty days after the date the Court approves the notice to the class.

## V. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. The Chief United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to

appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
November 9, 2016